## In re EASTMAN OIL CO.

(District Court, S. D. Georgia. October 30, 1916.)

1. CORPORATIONS ⬡⟹432(3)—OBLIGATIONS—VALIDITY.

While there is a presumption that a note executed in the name of a corporation by its president, payable to himself as an individual, was not issued for corporate purposes and with lawful authority, the note is not absolutely void, and the presumption of validity can be rebutted, and the note shown to be the obligation of the corporation, by proof of express or implied authority, or by a showing of ratification or estoppel on the part of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1728, 1743, 1762; Dec. Dig. ⬡⟹432(3).]

2. CORPORATIONS ⬡⟹414(2)—NOTES—AUTHORITY—IMPLIED AUTHORITY.

Several years before bankruptcy, at a meeting of the stockholders at which the directors were present, a statement was submitted showing, among other liabilities, notes due the president. Thereafter the president continued his practice of making advances to the corporation, and as president executing notes payable to himself as an individual. The corporate by-laws gave the president and treasurer authority to sign such notes as might be necessary to procure funds for the expenses of the corporation, and resolutions of the directors were passed from time to time authorizing the president to borrow such funds as he might deem necessary. Held that, though the president was not given express authority to borrow money from himself, nevertheless, in view of the conduct of the

directors and stockholders of the corporation, the president had implied authority to borrow from himself and execute notes from the corporation payable to himself as an individual.

[Ed. Note.—For other cases; see Corporations, Cent. Dig. § 1641; Dec. Dig. ☞414(2).]

**3.** CORPORATIONS ☞426(7)—NOTES—EXECUTION—RATIFICATION.

In such case, as the funds borrowed from the president were used for the benefit of the corporation, the continuous course of conduct on the part of the stockholders and directors amounted to a complete ratification of the act of the president in borrowing from himself, and executing notes of the corporation payable to himself as an individual.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1702, 1703, 1713; Dec. Dig. ☞426(7).]

**4.** CORPORATIONS ☞425(3)—ACTS OF DIRECTORS AND STOCKHOLDERS—ESTOPPEL.

In such case, as the directors and stockholders knew of the loans and that the proceeds were used for corporate purposes, their acquiescence estopped the corporation from attacking the validity of the notes executed by the president, payable to himself; such notes at most not being illegal, but simply ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1700; Dec. Dig. ☞425(3).]

**5.** CORPORATIONS ☞424—ESTOPPEL—CREDITORS.

In such case, as there was no fraud, creditors of the corporation were equally estopped to question the notes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1696; Dec. Dig. ☞424.]

In Bankruptcy. In the matter of the bankruptcy of the Eastman Oil Company. On petition by the trustee and creditors to review an order of the referee overruling objections to the claims of J. W. Brock. Order affirmed.

John R. L. Smith, of Macon, Ga., for petitioning creditors.
Hardeman, Jones, Park & Johnston, of Macon, Ga., for trustee.
Akerman, Akerman & McManus, of Macon, Ga., for bankrupt.
Bonham, Watkins & Allen, of Anderson, S. C., for claimant.

LAMBDIN, District Judge. This matter is before me upon the petition of the trustee of the Eastman Oil Company, bankrupt, and of certain of its creditors, for a review of the order granted by the referee overruling their objections to the claims of J. W. Brock, of Honea Path, S. C., and allowing said claims. The claims of Mr. Brock, aggregating $46,601.24, are all based on promissory notes held by him against the Eastman Oil Company, and signed "Eastman Oil Company, J. W. Brock, Pres. & Treas.," and payable "to the order of J. W. Brock." The trustee and the creditors objected to these claims on the grounds that it did not appear that said Brock was authorized, by the board of directors to sign the notes; that said Brock, in making said notes payable to himself, was acting in behalf of the corporation and himself, and could not, therefore, make any valid and binding contract in behalf of the corporation; and that the act of said Brock in signing the notes as president and treas-

urer and making them payable to himself was without the scope of his authority.

It appears from the record that these notes cover a period of seven or eight years, beginning in 1907, and running through each of the succeeding years up to March 24, 1915, at which time a note for $581.33 was executed; the only other note in the year 1915 being given on January 19, 1915, which was for $5,000. Over $33,000 of these notes were given prior to the year 1914. The date of the adjudication was May 1, 1915.

The referee has filed a full and clear opinion in the matter, and has made certain findings of fact and conclusions of law therein, which the court, after a very thorough examination of the entire record, entirely approves. The referee finds that J. W. Brock furnished to the Eastman Oil Company the money represented by the notes in question, and that it was received by and used for the benefit of the bankrupt corporation; that the directors, as well as the stockholders, had full knowledge of the fact that Brock was himself furnishing this money; that the notes appeared among the liabilities of the company, and were carried in its recognized "bills payable" account, and were brought to the attention of the directors in the financial statements furnished personally by the president and by the audits which were made from time to time of the company's accounts; that the notes were practically all handled through the Citizens' Bank of Honea Path, S. C., of which Mr. L. A. Brock, the vice president of the bankrupt, was president, and Mr. P. W. Sullivan, a director of the bankrupt, the cashier; that with full knowledge that J. W. Brock was himself furnishing the money and executing notes to himself for same, purporting to be the notes of the corporation, the directors made no objection to the transactions; and that the trustee of the bankrupt had a complete audit made of the general accounts of the bankrupt from its organization to the date of its adjudication (which was available to the trustee and creditors objecting to the claims), and that no evidence had been submitted which in any way impeached any of the transactions between Mr. Brock and the bankrupt.

Counsel for the trustee and creditors, however, contend that the notes in question are not the acts of the company, and are therefore absolutely and conclusively void, as matter of law, and that Brock can base no claims on same; that the question of the good faith or the fairness of the transaction has nothing to do with the case; and that, if Mr. Brock has any claim against the corporation, he should base same upon open account for moneys advanced to the bankrupt, and not upon the notes in question. In other words, their contention, as to said notes, is in the nature of a plea of non est factum.

[1] The issue, therefore, is a narrow one. The Court of Appeals of the state of Georgia, in the case of Capital City Brick Company v. Jackson, in 2 Ga. App. 771, 59 S. E. 92, had a similar question before it. In that case the Georgia court held that—

"a note executed in the name of a corporation by its president, payable to himself as an individual, carried no presumption that it was issued for cor-

porate purposes and with lawful authority, but that, on the contrary, this fact raised the presumption that such note is not the auhorized act of the corporation."

The last headnote in the case is as follows:

"The presumption that the note sued on was not the authorized contract of the corporation, not having been overcome, but being confirmed by the evidence, the verdict should be set aside and a new trial granted."

The Court of Appeals of Georgia, in support of its position in this case, quoted extensively from the opinion of the Circuit Court of Appeals of the Eighth Circuit in the case of Park Hotel Company v. Fourth National Bank of St. Louis, 86 Fed. 742, 30 C. C. A. 409. In the body of the opinion of the court in the last-named case, at bottom of page 744, occurs the following language:

"To the general rule that the acts and contracts of a general agent, within the scope of his powers, are presumed to be lawfully done and made, there is an exception as universal and inflexible as the rule. It is that an act done or a contract made with himself by an agent on behalf of his principal is presumed to be, and is, notice of the fact that it is without the scope of his general powers, and no one who has notice of its character may safely rely or recover upon it without proof that the agent was expressly and specially authorized by his principal to do the act or to make the contract."

A careful reading of the opinions of the courts in the two cases mentioned, as well as the other cases cited by counsel for both sides, leads the court to conclude that a note executed as the one involved in this case is not absolutely and conclusively void, but only presumptively void, and this presumption may be rebutted, and the note shown to be the act and deed of the corporation, by proof of express or implied authority, or by showing ratification or estoppel on the part of the corporation. In other words, the note is only voidable, at the election of the corporation or its creditors; the presumption being that it is void, and the burden being on the holder to show that it is the valid obligation of the corporation. Similarly, and involving the same principle, it has been held by the Supreme Court of Georgia that a sale by an administrator of the property of his intestate to himself as an individual is not void, but merely voidable at the election of those who may be interested in the estate, and that this election must be made within a reasonable time. Smith v. Granberry, 39 Ga. 381, 99 Am. Dec. 464; Grubbs v. McGlawn, 39 Ga. 672. And what is a reasonable time in which to institute proceedings depends upon the peculiar facts of each case. Word v. Davis, 107 Ga. 783, 33 S. E. 691.

In the Jackson Case, cited above from the Georgia Court of Appeals, as well as in the case from the Circuit Court of Appeals of the Eighth Circuit, the holders of the notes in question in those cases were not able to overcome the presumption of want of authority on the part of the officers executing the notes, respectively; but, on the contrary, it was shown that the corporation whose name, in each instance, was signed to the note by such officer, was only an accommodation maker, and received no benefit whatever from the trans-

action, and this fact differentiates the two cases mentioned from the case at bar.

[2-5] From the findings of the referee, and from the evidence in the case, the court is of the opinion that the claimant has successfully carried the burden in this case. As early as June 9, 1908, at a meeting of the stockholders, at which the directors were also present, a statement was submitted, showing, among the liabilities of the corporation, "Notes due Citizens' Bank, $18,000.00; notes due J. W. Brock, $4,000.00;" and from that time to the bankruptcy of the company it is evident that the directors and stockholders knew of the loans made by Mr. Brock to his corporation, and that he was taking its notes to cover same. The by-laws of the corporation gave its president and treasurer authority to sign such notes as he might find necessary to procure funds for the expenses of the corporation, and resolutions of the directors were passed from time to time authorizing the president and treasurer to borrow for the use of the company such funds as he thought necessary. The president and treasurer was not, therefore, given express authority to borrow money from himself; but it was the common knowledge of the directors and stockholders all along that he was doing so, and no objection was ever made. I am clearly of the opinion that, by the conduct of the corporation and its officers and agents in this matter, an implied authority was given to Mr. Brock to borrow from himself and to execute notes from the corporation to himself for same; and, even if this were not the case, their continuous course of conduct in the matter would constitute a complete ratification of the act of Mr. Brock in the matter, and same, in connection with the fact that the money so advanced by Mr. Brock was used in meeting the expenses of the company, would and did work a complete estoppel on the corporation. And I am further of the opinion that whatever bound or estopped the corporation in this matter would, in the absence of fraud (and none has been proven in this case), be equally binding upon the creditors, and that they, in the absence of such fraud, cannot successfully make an attack upon a transaction which the corporation itself could not successfully attack. This principle is stated still more broadly in 7 Ruling Case Law, § 463, on page 483, where the following language is used:

"The rule that a director or other officer cannot act for the corporation in a matter in which he is interested is intended for the benefit of the corporation and its stockholders, who may, like an individual, elect to confirm a transaction which could have been repudiated, in which case the contract becomes fully binding on the corporation to the same extent as any other duly ratified contract entered into by an unauthorized agent. So the rule is for the benefit of the corporation and its stockholders, and does not extend to its creditors, in the absence of fraud, and when a disposition of the property of the corporation is assailed by its creditors, they are not clothed with the right of the corporation or of its stockholders to set it aside solely on the ground that it was entered into by representatives who had put themselves in a relation antagonistic to the interest of their principal."

In the case of Bensiek et al. v. Thomas et al. (decided by the Circuit Court of Appeals of the Eighth Circuit) 66 Fed. 104, 13 C. C. A. 457, it was held that although a loan was obtained in violation of the by-

laws of the corporation, and a deed of trust was made to secure same, yet the corporation, having received and used the money with the knowledge of the stockholders, was estopped to deny the authority of the directors to borrow it, and that—

"when an act done by a private corporation is not per se illegal, or malum prohibitum, but is simply ultra vires, and is not a matter of public concern, but merely affects the interests of the stockholders, the latter may so act as to deprive themselves of the right to challange its validity."

The foregoing principles are also fully established by the decisions of the Supreme Court of the United States. The first two headnotes to the opinion of the Supreme Court in the case of Twin-Lick Oil Company v. Marbury, 91 U. S. 587, 23 L. Ed. 328, are as follows:

"A director of a corporation is not prohibited from lending it moneys when they are needed for its benefit, and the transaction is open, and otherwise free from blame; nor is his subsequent purchase of its property at a fair public sale by a trustee, under a deed of trust executed to secure the payment of them, invalid.

"The right of a corporation to avoid the sale of its property by reason of the fiduciary relations of the purchaser must be exercised within a reasonable time after the facts connected therewith are made known, or can by due diligence be ascertained. As the courts have never prescribed any specific period as applicable to every case like the statute of limitations, the determination as to what constitutes a reasonable time in any particular case must be arrived at by a consideration of all its elements which affect that question."

In the case of Indianapolis Rolling Mill v. St. Louis, Ft. Scott & Wichita Railroad, 120 U. S. 256, at page 259, 7 Sup. Ct. 542, at page 544, 30 L. Ed. 639, Mr. Justice Miller used the following language:

"The rule of law upon the subject of the disaffirmance or ratification of the acts of an agent required that if they had the right to disaffirm it they should do it promptly, and if, after a reasonable time, they did not so disaffirm it, a ratification would be presumed. In regard to this it appears that the board, when notified of what had been done by their agents, did not disaffirm their action at that time, but that the act or resolution of disaffirmance was passed about two years after notice of the transaction, and that if the suit brought in this case can be considered, as an act of disaffirmance, it came too late, as it was commenced some six months after they had knowledge of the release."

Similarly in the case of Railway Companies v. Keokuk & Hamilton Bridge Company, 131 U. S. 371, at page 381, 9 Sup. Ct. 770, at page 773, 33 L. Ed. 157, Mr. Justice Gray, speaking for the Supreme Court of the United States, used the following language:

"When the president of a corporation executes, in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified his act. Indianapolis Rolling Mill v. St. Louis, etc., Railroad, 120 U. S. 256 [7 Sup. Ct. 542, 30 L. Ed. 639]. And when a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract, without objection, it may be presumed to have authorized or ratified the contract of its agent. Bank of Columbia v. Patterson, 7 Cranch, 299 [3 L. Ed. 351]; Bank of United States v. Dandridge, 12 Wheat. 64 [6 L. Ed. 552]; Zabriskie v. Cleveland, etc., Railroad, 23 How. 381 [16 L. Ed. 488]; Gold Mining Company v. National Bank, 96 U. S. 640 [24 L. Ed. 648]; Pneumatic Gas Company v. Berry, 113 U. S. 322, 327 [5 Sup.

Ct. 525, 28 L. Ed. 1003]. This doctrine was clearly and strongly stated by Mr. Justice Story, delivering the judgment of this court, in each of the first two of the cases just cited."

The opinion of the Circuit Court of Appeals of the Fifth Circuit in the case of Augusta, T. & G. R. Co. et al. v. Kittel, 52 Fed. 63, 2 C. C. A. 615, is also in point. The first headnote in that case is as follows:

"When the president of a company chartered by the state of Florida for the construction of a railroad, under the authorization of the board of directors, mortgages the company's land, and the money, which is loaned in good faith, is used by the officers of the company for company purposes, and the validity of the transaction is recognized by payment of interest, and the transaction is brought to the notice of the directors, both actually and by recordation of the deeds, and there is no repudiation of the mortgage or denial of the authority of the president in the premises, a subsequent resolution by part of the directors, made long afterwards, disapproving and annulling the president's authority, does not invalidate the transaction or prevent a foreclosure, since the company tacitly ratified the act of the president, by not promptly disaffirming the transaction."

From the foregoing authorities, it is clear that no express and formal action on the part of the Eastman Oil Company or its board of directors was necessary, in order to make the notes in question binding upon the corporation or its creditors. The continuous course of conduct on the part of the corporation and its officers and agents, with respect to the loans made by Mr. Brock to his company, and the notes taken by him therefor, and their knowledge of such transactions, and the use of the money for the benefit of the corporation in carrying on its operations—all these things, under the principles above enunciated, make these notes valid obligations of the bankrupt, and the referee was right in overruling the objections to same.

---

⬙⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes