HENRY GILMAN

*vs.*

F. O. BAILEY CARRIAGE CO., INC.

No. 5353

No. 5354

Cumberland.    Opinion March 30, 1928.

92

*Clifford E. McGlauflin,* for plaintiff.
*Clement F. Robinson,*
*Forrest E. Richardson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, MORRILL, DEASY, STURGIS, BASSETT, JJ.

STURGIS, J.   Two actions of assumpsit tried together in the court below and brought forward in a single record.

In No. 5353 the defendant is sued as maker of seven promissory notes, and as indorser of four customer's notes so called, all of which the plaintiff holds as indorsee. In No. 5354 the plaintiff seeks to recover upon seven checks drawn by the defendant and transferred to the plaintiff by the payee.

Verdict was for the plaintiff in both suits, and the cases come before this Court on general motions and exceptions to denial of motion for directed verdicts, rulings upon evidence during the trial, and instructions given and refused in the charge to the jury.

The F. O. Bailey Carriage Company, Inc., the defendant in this suit, was incorporated in 1913 as a reorganization of the F. O. Bailey Carriage Company. The board of directors consisted of five members, but from the date of incorporation through the period here involved Neal W. Allen, Charles W. Phinney, and William A. Gilman, were the active members of the board, other directors giving little if any attention to the management of the Corporation. Mr. Phinney had general charge of merchandise. Mr. Allen was actively interested in another business, and while he kept a general contact with this business, he was not regularly engaged in its affairs. Mr. Gilman was treasurer and financial manager.

On August 30, 1913, the board of directors voted that "the treasurer of this corporation be and hereby is empowered and authorized in the name and on behalf of this corporation to sign and indorse any and all notes, checks or drafts." That vote remained unrescinded, and the entire financial management of the corporate affairs was left to the treasurer apparently without interference on the part of the board, except as upon the treasurer's reports the board at their monthly meetings discussed and acted upon corporate matters.

Our consideration of the cases will follow their numerical order and be of necessity subdivided as varying issues require.

## No. 5353

GENERAL MOTION.

EXCEPTION TO REFUSAL TO DIRECT VERDICT.

The plaintiff's claims in this action are based upon corporation notes made or transferred by the treasurer without the knowledge of the other directors. He is a brother of the treasurer and asserts that he paid value for all these notes and that the Corporation is liable to him for these moneys.

*Group I.*

The treasurer of the Corporation, W. A. Gilman, was a witness for the plaintiff. He testifies that on September 13, 1914, the Company was short of ready money, and to enable it "to get through the day" he drew his personal check for $145 and deposited it in the checking account of the Corporation. Again on October 2d of the same year he advanced $200 to meet the Company's note due on that day to the Excelsior Carriage Company, and on September 17, 1915, he advanced $300 to pay the corporation note payable to the Boston Harness Company. He says these advances were not repaid, and at the end of the fiscal year, January 31, 1916, there being an unpaid balance of salary amounting to $160 due him, he issued to himself a corporation note for $805, dated February 1, 1916, which is the note declared upon in the first count of the plaintiff's writ. In support of these statements extracts from the books of the Company were read into the record showing minutes upon the books evidencing the issuance and existence of this note to W. A. Gilman.

The note was signed "F. O. Bailey Carriage Company (Inc.) By W. A. Gilman Treas." It bore notation on its face that it was for cash loaned in "1914 — $345" and in "1915 — $300", and for "salary due (Bal.) 1915 — $160." It was on demand with interest, and according to the testimony of the plaintiff and W. A. Gilman, sometime in 1917 was sold to the plaintiff for full face value. Interest was paid on it up to January 31, 1921.

At the end of the next fiscal year, W. A. Gilman testifies the Corporation owed him $470. He says that he advanced to the Corporation on February 1, 1916, $70 to meet a Harness Company note; February 24th, 1916, he put his own check for $125 into the Company's cash; and later, in a settlement of his personal accounts with James Bailey Company for which he acted as part time bookkeeper, that Company's debits against the defendant were set off to the amount of $79. These sums, with unpaid salary of $160, and balance due for interest on the note which he had taken the preceding year, made up the $470 due him on February 1, 1917, and he issued the Company's note payable on demand to himself for that amount. The plaintiff and W. A. Gilman concur in the statement that this note was also sold to the plaintiff for full face value, and interest paid as per indorsements until January 31, 1921. This note bears notations on its face indicating the consideration for which it was issued, and bookkeeping entries recording its existence are in the record.

An important fact concerning these notes is in evidence. Both Mr. Allen and Mr. Phinney, who with the treasurer were the active directors of the Corporation, admit that they had knowledge of the existence of these notes, but deny knowledge of the transfer to the plaintiff. Furthermore, it is undenied that an audit made of the Company's affairs included a statement of the existence and amounts of these notes, and that a copy came into the hands of the several directors.

Both notes were executed by the treasurer in the name of the Corporation and payable to the treasurer as an individual. And while such a note is a danger signal which the discounter or purchaser disregards at his peril, and under the Uniform Negotiable Instruments Act, P.L. 1917, Chap. 257, each is not "regular upon its face" (Sec. 52), the plaintiff is not "a holder in due course"

(Sec. 52), and "the paper is subject to the same defenses as if it were non-negotiable" (Sec. 58), *Gilman* v. *Carriage Company*, 125 Maine, 108, and cases cited, it is not absolutely void. In such a case it is not a question of purchase in good faith. The purchaser takes with notice given on the face of the instrument, and his rights depend upon the transaction being or not being in fact for the corporate uses and benefit.

"The officer may in good faith lend money or credit to the corporation on the same terms as a stranger, and take and enforce security for the payment of the debt." 2 Thomp. on Corp., 2d Ed., Sec. 1412.

"So long as a corporation is solvent, it may borrow money from, or otherwise contract with, an officer or director, and may pay him or mortgage or pledge property to secure him, just as it may pay or secure any other creditor . . . In other words, if there is an indebtedness owing a corporation officer from the corporation and the corporation is solvent, there is no question but that the corporation may give its officer security for the debt, such as a note, mortgage or pledge of corporate bonds, or the like . . . " Fletcher on Corp., Vol. IV, 3570.

As already noted, the directors by vote had given the treasurer a general authority "to sign and indorse any and all notes, checks or drafts." It is unquestioned that in the general trading business of the Corporation the treasurer arranged and negotiated all commercial loans and discounts. The active members of the board left this part of the corporate business to the treasurer's sole care and management, giving it only a general supervision. The treasurer's reports showing the existence of these two notes payable came before the board at repeated monthly meetings, the reports stating by abbreviation that the notes were payable to the treasurer. They were also included in "notes payable" in the auditor's report. There was no objection to the treasurer's acts in these matters and no repudiation of the notes issued.

The Court has stated and affirmed the rule that a board of directors may establish a mutual understanding that the treasurer shall be the active agent of the board in the management of the financial affairs of the corporation. Such an understanding need not be created by a formal vote, it may be inferred from the situa-

tion and conduct of the parties. An officer may acquire the power to bind the corporation by the habit of acting with the assent and acquiescence of the board, and his unauthorized acts may be confirmed by the approval and acquiescence of the board. Previous authority and subsequent ratification may be shown by circumstances and conduct. *Johnson* v. *Johnson Brothers,* 108 Maine, 272, 279; *York* v. *Mathis,* 103 Maine, 67, 79; *Pierce* v. *Morse-Oliver Co.,* 94 Maine, 406; R. S., Chap. 51, Sec. 72. See also *Murray* v. *Nelson Lumber Co.,* 143 Mass., 250; *Sherman* v. *Fitch,* 98 Mass., 64; *Blake* v. *Domestic Mfg. Co.,* 64 N. J. Eq., 480.

Ratification may also be implied from the receipt and retention of the benefits of an unauthorized act of an agent. Where a contract is made by an agent in behalf of a corporation, but without authority, and the corporation, after knowledge of the facts attending the transaction, receives and retains the benefit of it without objection, it thereby ratifies the unauthorized act and estops itself from repudiating it. "The reason is that it must exercise its option of affirming or disaffirming in whole, not in part; that it cannot disaffirm so much of the unauthorized act as is onerous while retaining so much of it as is beneficial; that it cannot keep the advantage while repudiating the burden; that it cannot disaffirm the contract while keeping the consideration." 2 Thomp. on Corp., 2d Ed., Sec. 2020.

The principle is stated in *Bryant* v. *Moore,* 26 Maine, 84, in these words: "There is no doubt that if one person knows that another has acted as his agent without authority, or has exceeded his authority as agent, and with such knowledge accepts money, property or security, or avails himself of advantages derived from the act, he will be regarded as having ratified it."

Conforming to this principle, in *Wayne Title & Trust Co.* v. *Schuykill etc. Ry. Co.,* 191 Pa. St., 90, the use by a corporation of money received on notes executed by its treasurer without authority, was held to be a ratification.

In *Ry. Co.* v. *K. & H. Bridge Co.,* 131 U. S., 371, Mr. Justice Gray, speaking for the Court, says: "When the president of a corporation executes in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of di-

rectors, and the board knowing he has done so does not dissent within a reasonable time, it will be presumed to have ratified his act. . . . And when a contract is made by any agent of a corporation in its behalf and for the purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it may be presumed to have authorized or ratified the contract of its agent."

In Re Eastman Oil Co., 238 Fed., 416, the president of the corporation, who was also its treasurer, loaned his personal moneys from time to time to the Company, taking corporate notes therefor, each payable to himself and drawn by him as president. The notes were carried in the corporate bills payable account, and were brought to the attention of the directors in the financial statements furnished by the president and by audits which were made of the Company accounts. That Court held that notes executed as the ones involved in the case were not absolutely void but only presumptively void, a presumption which may be rebutted and the notes shown to be the act and deed of the corporation by proof of express or implied authority, or of ratification or estoppel on the part of the corporation; and upon the authority of the *Ry. Co.* v. *The K. & H. Bridge Co.*, supra, concludes that although the president's acts were not authorized, the retention and use of the benefits procured from the transaction, with the knowledge possessed by the directors, amounted to a ratification of the unauthorized acts and bound the corporation.

The defendant questions the purported loans of W. A. Gilman, its treasurer, which the plaintiff sets up as a consideration of the two notes now under discussion. To the defense of lack of authority is added a claim that the money paid into the Corporation by the treasurer for which, he says, these notes were later issued, was in fact only a replacement of money which he had previously improperly withdrawn. If this fact is established no ratification could result from the retention of this money by the Corporation. Ratification cannot be predicated on the receipt and retention of the benefits of the unauthorized act of an agent when the principal is legally entitled in any event to what he received. *Goss* v. *Kilby*, 112 Maine, 323; *White* v. *Saunders*, 32 Maine, 188; *Crooker* v. *Appleton*, 25 Maine, 131.

In cross-examination of the defendant's accountant, however, and in subsequent rebuttal, the apparent discrepancies and lack of entries in the books were explained in behalf of the plaintiff by the treasurer of the corporation, and the audit of the defendant's accountant was sharply attacked, the accountant finally admitting that he had no evidence that the treasurer "received any cash that should have gone into that Company that did not go into the Company."

Upon conflicting evidence the jury found for the plaintiff. We cannot say their verdict was clearly wrong: There is sufficient evidence, we think, to sustain a finding that W. A. Gilman advanced moneys to the Corporation to the amount of these notes in Group I for which the plaintiff paid full value, and to warrant the jury in drawing the inference either (1) that W. A. Gilman had acquired authority "to bind the Corporation by the habit of acting with the assent and acquiescence of the board" to the extent of making these loans and issuing these corporation notes therefor, or (2) in the first instance having no authority to do so, subsequently his unauthorized acts were ratified by the receipt and retention of these moneys by the Corporation. Under the rules of law above stated, the verdict must stand.

*Group II.*

In addition to the notes already passed upon the treasurer made four other corporate notes payable to himself, all of which he indorsed and turned over to the plaintiff. The notes are as follows:

(1)  March 11, 1922, on demand with interest — $700
(2)  March 11, 1922, on demand with interest — $800
(3)  July   27, 1922, on demand with interest — $950
(4)  Sept.  17, 1923, on demand with interest — $301.50

These notes, the plaintiff says, were drawn to repay loans which the plaintiff himself had made from time to time to the Corporation. The treasurer confirms this claim. His statement is that acting for the Corporation he had borrowed from his brother, the plaintiff, various sums of money, each time stating that the loan was to the Corporation and not to himself personally. He says he made the notes to himself and indorsed them over to his brother. He carried a record of the notes in the cash book and ledger account of notes payable and reported them in his monthly reports

to the directors. He did not inform the other corporate officers of the fact that the loans came from the plaintiff, but permitted the records to indicate that the notes were payable to himself.

A substantially similar situation obtains as to the fifth note. The treasurer testifies that he had borrowed moneys for the Corporation from time to time from the W. A. Gilman Company, Inc., a corporation of which his wife was the active head and he the treasurer and custodian of its funds. He had also borrowed, he says, further sums of the plaintiff and had himself made small advances, and to evidence or repay these corporate debts he made a corporation note for $970 on August 7, 1924, to the W. A. Gilman Company, Inc., which, upon payment of the amounts of the Gilman Company and W. A. Gilman interests in the note, was immediately transferred to the plaintiff. This note was on demand with interest.

Within the proper limits of this opinion it is not possible to detail the evidence offered to show the consideration of these notes. W. A. Gilman gives dates and amounts of the loans alleged to have been made by the plaintiff and by W. A. Gilman Company, Inc., and in many instances states the specific corporate uses to which these moneys were applied. The plaintiff's evidence is that he made his advances in cash, and the treasurer testifies that in order to preserve a record of the transaction he deposited such moneys in his personal account and drew his own check in favor of the Corporation. He supports his statements by the introduction of such checks.

The defendant claims that these notes were also made without authority and were without consideration. It says the claim of the plaintiff is unfounded, and that the checks paid into the corporate treasury by W. A. Gilman were, as in the case of the first two notes, only refunds of his previous misappropriations. It points out that its cash book and ledger kept by the treasurer disclose only the notes with no record of the advances, and that W. A. Gilman's personal bank account fails to show deposits in amounts corresponding to alleged advances by the plaintiff.

The treasurer explains the lack of record of the plaintiff's advances by saying that these loans were carried on memorandum or petty cash books, now lost, and are in fact represented in the

books by disbursements entered under their specific heads. He charges the apparent shortage to losses on return of goods, or failure of the auditor to check original slips and a misinterpretation of records. The inconsistencies between his statements and personal bank account records are attributed to his errors of memory.

The plaintiff relies on his special counts on these notes, and the case was evidently submitted to the jury upon these pleadings. The issues of irregularity of the paper and of the treasurer's authority, originally conferred or acquired through acquiescence or ratification, are in all material respects the same as upon the notes sued upon in the first two counts and are governed by the rules of law already fully discussed. Except for the fact that here the plaintiff claims that he advanced the consideration for these notes *directly* to the Corporation, these notes could have properly been included in Group I.

Upon conflicting evidence in which the credibility of witnesses was an important factor the jury found for the plaintiff on these notes. The credibility of witnesses and the weight to be given testimony is peculiarly within the province of the jury, and their finding cannot be set aside unless manifest error is shown or the verdict appears to result from bias or prejudice. None of these grounds of reversal are found.

*Group III.*

The remaining notes involved in No. 5353 were received by the Corporation from customers in course of trade and discounted with the plaintiff. The evidence is plenary that the treasurer was fully authorized to discount customer's notes. Mr. Phinney of the board of directors testifies that the discount of trade paper was left entirely with Mr. Gilman with no restrictions upon his discretion. W. A. Gilman testifies that his discount of customer's notes was a frequent and regular occurrence, and says that these notes were discounted with the plaintiff as a result of notice from the bank that the Corporation's credit on discounts of customer's paper had reached its limit. We are convinced that the indorsement of these notes to the plaintiff was for the corporate benefit and fully authorized, as was the waiver of presentment, demand and notice which the treasurer executed.

For the reasons stated, the defendant's motion for a new trial and exceptions to the refusal of the presiding Justice to direct a verdict in its favor must be overruled.

## No. 5354

The plaintiff is also the holder of seven checks drawn in behalf of the defendant Corporation by W. A. Gilman, its treasurer, and all payable to "W. A. Gilman." Four checks were admittedly issued in payments of dividends duly declared and owing to W. A. Gilman and were transferred to the plaintiff for value. The apparent irregularity on the face of the paper arising out of the identity of the payee is thus fully met.

Three checks are claimed to have been issued as payment for loans and other advances made to the Corporation by the plaintiff under circumstances sufficiently similar to those incident to the advances for which the notes in Group II, Case 5353, were given to make a review of the evidence unnecessary. The jury by their verdict found that the plaintiff advanced moneys to the Corporation to the amount of the checks, and that the acts of the treasurer in these matters were authorized in the first instance or subsequently ratified. The evidence, we think, warrants this finding.

Presentment and notice of dishonor of the checks, however, was not made, and the defendant seeks to escape liability on this ground. This defense cannot prevail. The record of the Corporation's bank deposit shows that subsequent to the making of these checks (the smallest of which amounted to $103.50), the defendant withdrew substantially all its funds from the bank, reducing its balance on December 31, 1924, to $25.73, at which figure it remained until after this suit was begun. A bank is not bound to pay a check on presentation unless it is in full funds. It is not obliged to pay or accept to pay if it has partial funds only. In Re Brown, 2 Story, 502, 4 Federal Cases, No. 1985. In the absence of an arrangement authorizing overdrafts the depositor has no ground to expect that this rule of banking will be violated. No "reasonable expectation" on the part of the defendant that any of these checks would be honored appears. Its withdrawal of its funds, therefore, excuses the plaintiff's failure to prove presentment and notice. Sec. 79, Uniform Negotiable Instruments

Act; *Emery* v. *Hobson*, 63 Maine, 33; *Beauregard* v. *Knowlton*, 156 Mass., 396; *Usher* v. *Tucker Co.*, 217 Mass., 441; *Savings Co.* v. *Weakley*, 103 Ala., 458; *Culver, Admr.*, v. *Marks*, 122 Ind., 554; 2 Daniels Negotiable Instrument, Secs. 1596, 1597.

No loss to the defendant caused by the delay in presentment appearing, the defendant is not discharged thereby from its liability on the checks (Sec. 186, Uniform Negotiable Instruments Act, P.L. 1917). The verdict and the refusal of the presiding Justice to direct a verdict for the defendant must be sustained.

## EXCEPTIONS.

Exceptions to the charge of the presiding Justice remain to be considered, objections to the admission of evidence being withdrawn. Forty-eight requested instructions were presented by defendant's counsel and all refused except so far as covered in the charge as given. Counsel admit on the brief, however, that the refusal to give many of these instructions "may well have been harmless."

The instructions given by the Court present a clear, concise and correct statement of the law material to the many issues involved in these two cases. Some of the instructions requested are but repetition and elaboration of principles already stated by the Court but couched in the language of counsel or quoted from decided cases. The Court is not required to give its instructions in words selected by excepting counsel. It is enough that they are correct as applied to the issues of the case. *Godfrey* v. *Haynes*, 74 Maine, 96; *Young* v. *Insurance Co.*, 80 Maine, 244, 250. Several instructions refused are in effect requests for nonsuits on certain counts in the plaintiff's writs. It is settled that exceptions do not lie to the refusal to give an instruction which amounts to a nonsuit. *Morneau Lt.* v. *Cohen*, 122 Maine, 543; *Hoyt etc. Co.* v. *Atlantic Ry.*, 111 Maine, 108. Others calling for a directed verdict for the defendant on certain counts, are based upon a part only of the issues involved and for that reason were properly refused. *Caven* v. *Granite Co.*, 99 Maine, 278.

A further discussion of the exceptions is unnecessary. In view of the conclusions of the Court upon the general motions it is immaterial, we think, whether the rulings of the court below as

abstract principles of law might on closest scrutiny disclose some technical error. If there be any erroneous ruling it did not, we think, affect the truth of the result, and should not be regarded as a sufficient reason for overturning a fair and honest judgment. *Mencher* v. *Waterman,* 125 Maine, 178; *Gordon* v. *Conley,* 107 Maine, 291.

The mandate in both cases is,

*Motion overruled.*
*Exceptions overruled.*