## EXCHANGE BANK *v.* THROWER.

118 433/
124 879

1. Authority to borrow money is among the most dangerous powers which a principal can confer upon an agent, and must be created by express terms, or be necessarily implied from the very nature of the agency actually created.
2. An employee of a State insurance agent, who is given the title "cashier," is not thereby impliedly authorized to indorse and discount drafts in the name of his principal.
3. Power to make restricted indorsements will not authorize a general indorsement in blank.
4. That an agent is authorized to indorse checks with a stamp reading, "Pay to the order of the Third National Bank for deposit. James T. Prince, man-

ager, by ——— cashier," and fill the blank therein with his own name, does not empower such cashier to indorse checks and drafts in blank, so as to collect the money thereon.

5. The evidence was conflicting ; and where there was testimony tending to show that the cashier was in full charge of the business during the frequent absence of the principal, and authorized to indorse other than for deposit only, a verdict finding for a bona fide purchaser of drafts so indorsed can not be disturbed by this court.

Argued June 29, — Decided August 12, 1903.

Complaint. Before Judge Reid. City court of Atlanta. November 1, 1902.

Prince was manager for an insurance company, for Georgia and other States. Brinsfield was his cashier. Two drafts, payable to "James T. Prince, manager," were indorsed by Brinsfield, thus: "James T. Prince, manager, by Kelly H. Brinsfield, cashier," and were cashed by Thrower, who deposited them with the Exchange Bank to his credit. The drafts were paid ; and Prince having denied the authority of the cashier to indorse, the bank refunded to him the proceeds, on his agreement to indemnify it in case of its failure to recover from Thrower the amount paid. The bank sued Thrower for this amount, and the trial resulted in a verdict for the defendant. The bank excepted to the overruling of its motion for a new trial, the grounds of which were, in substance, that the verdict was contrary to law and the evidence ; that the court erred in instructing the jury that a verdict could be found for the defendant if they believed from the evidence that Brinsfield was general agent of Prince, this instruction being erroneous because there was no evidence to authorize it ; that the court erred in submitting to the jury the question of the defendant's good-faith in the purchase of the drafts, as a matter which might have a controlling influence on the verdict ; and that the court erred in admitting in evidence a certain draft (described by date and amount and as " copied in the brief of documentary evidence"), over the objection that it was irrelevant.

*Rosser & Carter* and *J. A. Anderson*, for plaintiff.
*Westmoreland Brothers*, for defendant.

LAMAR, J. Authority to borrow money is among the most dangerous powers which a principal can confer upon an agent. Whoever lends to one claiming the right to make or indorse negotiable paper in the name of another does so in the face of all the danger

signals of business.    He need not lend or discount until assured
beyond doubt that the principal has in fact appointed an agent
who by the stroke of a pen may wipe out his present fortune and
bind his future earnings.    The very nature of the act is a warn-
ing; and if the lender parts with his money, he does so at his
own peril.    If the power was not in fact conferred, he must bear
the loss occasioned by his own folly.    A power so perilous is not
to be implied from acts which in other matters less hazardous
might create an agency.    It must be conferred in express terms,
or be necessarily and inevitably inferable from the very nature of
the agency actually created.    So strict is the rule that it will not
be presumed even from an appointment of one as general agent,
unless the character of the business or the duties of the agent are
of such a nature that he was bound to borrow in order to carry
out his instructions and the duties of the office.    Civil Code,
§§ 3004, 3021; *Dobbins* v. *Etowah Mfg. Co.*, 75 *Ga.* 238; Mechem
on Agency, § 536; Tappan *v.* Bailey, 4 Met. 536; Jackson Co. *v.*
Com. Nat. Bk. (Ill.), 65 N. E. 136; Doubleday *v.* Kress, 50 N. Y.
410.    While the agent here was given the rather high title of
"cashier," that of itself did not clothe him with the powers which
might have been exercised by an officer bearing that title if em-
ployed by a bank.    In view of the reluctance with which the law
presumes the existence of the power to borrow, this title will be
considered to indicate that he was a cash keeper, rather than a
cash borrower.    Nor will the fact that he was authorized to fill out
the blank and indorse drafts with a rubber stamp reading, " Pay to
the order of the Third National Bank for deposit, James T. Prince,
manager, by ——— cashier," be treated as authority to indorse in
blank.    On the contrary, the character of the stamp itself indicated
that the principal only authorized a restricted indorsement for the
mere purpose of allowing the bank, rather than the agent, to collect.
It does not import a general authority to indorse, not does posses-
sion of the draft indicate that the agent had the right to discount
the draft or collect the proceeds.

The stringent rules of agency are intended to protect a principal
against unauthorized acts, but not to shield one who has in fact con-
ferred such authority or ratified his conduct.    Here the plaintiff de-
nied that any authority had been given further than that implied in
conferring the title " cashier," and the right to use the stamp above

copied. It denied that Prince had knowledge of the conduct on the part of Brinsfield, or that he in any manner ratified the indorsements or collections which were shown to have been made by him. The testimony for the defendant was to the contrary, and was to the effect that the trouble was not so much a want of authority to indorse, as the improper use Brinsfield made of the money after it was collected ; that he was a general agent, indorsing drafts, handling the cash, paying out money, occasionally drawing checks, and in full and complete charge of the business during the frequent and necessary absences of the principal ; that he had discounted another draft with Thrower some months before, for $394, which was paid without objection ; that on these and other like drafts indorsed in the same way, of which Prince denied knowledge, Brinsfield had collected some $8,500, which he had appropriated to his own use ; that he originally wrote the indorsements in his own handwriting before the stamp above referred to was prepared ; and that there were other stamps in the office used by him, on which the words " for deposit " were wanting, apparently contemplating that he had authority to indorse in blank and to collect.     The evidence, while conflicting, was sufficient to sustain the verdict for the defendant.  We have no power to interfere where the judge of the lower court has re-examined the evidence on the motion for a new trial, and, by his refusal to set it aside, expressed himself as fully satisfied with the verdict.

*Judgment affirmed.    By five Justices.*