### 477. CAPITAL CITY BRICK COMPANY v. JACKSON.

1. The presumption that the president of a business corporation is authorized to execute negotiable instruments in the name of. the corporation arises only where such instruments are apparently made for corporate purposes, in the ordinary course of the corporate business.
2. A negotiable promissory note made in the name of the corporation by its president, in which he is named as payee, is prima facie void as to such corporation. The burden is upon the holder of such note to show that it is in fact the contract of the corporation.
3. The naming of the officer of the corporation, who executes a note ostensibly in its behalf, as the individual payee therein is a danger signal, and such note "bears its death wound upon its face."
4. Such instrument being sufficient in itself to put the taker on inquiry, he is chargeable with whatever knowledge he could have acquired by such inquiry, and can not claim the protection and rights of a bona fide holder.
5. The presumption that the note sued on was not the authorized contract of the corporation, not having been overcome, but being confirmed. by the evidence, the verdict should be set aside and a new trial granted.

Complaint, from city court of Atlanta—Judge Reid. March 9, 1907.

Submitted October 14,—Decided November 11, 1907.

E. M. & G. F. Mitchell, for plaintiff in error.

Tye, Peeples, Bryan & Jordan, H. M. Scott, contra.

HILL, C. J. This writ of error challenges the validity of a judgment based on the following promissory note: "Atlanta, Ga., July 1st, 1903. Ninety days after date we promise to pay to the order of T. F. Stubbs two hundred and eighty-three and 20/00 dollars at any bank in Atlanta, Georgia. Value received. Capital City Brick Company, per T. F. Stubbs, Pres." The note was endorsed in blank by Stubbs and transferred to the plaintiff in payment of a pre-existing debt which Stubbs owed him. The defense

made by the corporation was, that Stubbs had no authority to make said·note, and that the plaintiff was not a bona fide holder of the same, as he knew that Stubbs had no right or authority to issue the note in the name of the corporation, or could have known it by making reasonable inquiry. The evidence is clear that Stubbs did not have authority from the corporation to execute the note, and that the plaintiff took the note from Stubbs in payment of a private pre-existing debt in which the company had no interest.

The controlling question in the case is whether the note carried upon its face sufficient indicia of authority to entitle the plaintiff to·the protection and rights of a bona fide holder. It was insisted by him that the note, having been executed in the name of the company by its president, was apparently and presumptively the authorized contract of the corporation. On the other hand, the defendant insisted that the note, having been made payable to the officer as an individual, who made it in the name of the company, was sufficient to put the plaintiff on inquiry as to the authority of such officer to execute the same. A promissory note executed in the name of the corporation by its president, in the ordinary course of business, and taken by one not connected with the corporation, may carry with it the presumption that it was issued for corporate purposes and under lawful authority; but a note executed in the name of the corporation by its president, payable to himself as an individual, is accompanied by no such presumption. On the contrary, this fact raises the presumption that such note is not the authorized act of the corporation, and is itself notice that it is without the scope of his general power as such official. Such a note is a danger signal, which the discounter or purchaser disregards at· his peril. In the language of Lord Denman, "it bears its death wound on its face." Joyce, in his work entitled "Defenses to Commercial Paper," sec. 485, states the principle as follows: "It is out of the usual course of business for a corporation· to issue its obligations·to its officers. The fact that an obligation is so made suggests that it may be irregular, and consequently a third person taking such an obligation, and knowing that the payee is an officer of the maker corporation, is put upon his inquiry as to whether or not the obligation has been lawfully issued. When the note or obligation shows upon its face that it is made to an officer, the note itself conveys the notice to all persons into whose hands it

may come." We think this statement of the law is sound in principle; and it is abundantly supported by the highest authorities. In Park Hotel Company *v.* Fourth National Bank (C. C. A. 1898), 86 Fed. 742, the note sued on was signed "Park Hotel Co., by Ed Hogaboom, Pres.," was payable to Ed Hogaboom, and was indorsed by him to a third party, who took the note without evi-dence of its invalidity, except as appeared from inspection. In an elaborate opinion, collating the authorities, the court held that there could be no recovery against the corporation. The case is so much in point that we quote a portion of the opinion: "The general authority of the president of a business corporation to make and discount its promissory notes gives him no power to make a note of the corporation payable to his own order, and one who dis-counts such a note can not recover thereon against the corporation without showing special authority for its execution. To the general rule that the acts and contracts of a general agent within the scope of his powers are presumed to be legally done and made, there is an exception as universal and inflexible as the rule. It is that an act done or a contract made with himself by an agent on behalf of his principal is presumed to be, and is notice of the fact that it is, without the scope of his general powers, and no one who has notice of its character may safely recover on it without proof that the agent was expressly and specially authorized by his principal to do the act or make the contract." The basis of the rule is well stated by the court in the following language: "This exception is a striking illustration of the policy of the law to prevent the possibility of conflict between the duty and the per-sonal interest of an officer or agent. It prohibits him from acting for both himself and his principal wherever their interests clash and makes every act and contract in which he violates the inhibi-tion voidable at the election of his principal. It forbids him to act at the same time as vendor and purchaser, or as lender and borrower, or as promisor and promisee. It forbids him to sell as the agent of his principal, and to buy for himself; to lend as the agent of his principal, and to borrow for himself; to promise as the agent of his principal, and to accept the promise and reap the benefits himself." In Porter *v.* Winona & Dakota Grain Com-pany, 78 Minn. 210, the note was made payable to "W. H. Gar-lock" and signed "The Winona & Dakota Grain Company by W.

H. Garlock, Pres." Garlock indorsed the note in blank and transferred it to a third party. The court held, that such a note was prima facie void, and that the person seeking to recover on it had the burden of showing that the officer assuming to execute it had actual authority. In the course of the opinion it is said: "It [the note] was made by the president of the corporation in its name, seemingly for his own accommodation, and thus bore on its face the evidence of its invalidity. He could not by virtue of his general authority as agent bind the corporation by a contract made by him as such agent with himself; and he had no authority whatsoever, unless it was specially given, to bind it by the execution and delivery of a negotiable paper which apparently was issued for his own use and benefit. And notice of the want of authority was the instrument itself."

In West St. Louis Savings Bank *v.* Shawnee County Bank, 95 U. S. 557, it appears that the cashier of a bank made his own note payable to the order of the bank, indorsed his official signature upon it, and borrowed money of one whom he told that he intended to use it to pay for some stock which he had purchased from the bank. In a suit by the indorsee against the bank, the court held there could be no recovery, because, "the very form of the paper itself carries notice to a purchaser of a possible want of power to make the indorsement and is sufficient to put him on his guard. If he fails to avail himself of the notice and obtain the information which is thus suggested to him, it is his own fault, and as against an innocent party he must bear the loss." The Supreme Court of Oregon, in Saylor *v.* Banking Company, 38 Oregon, 204, goes to the extreme limit in support of the law here announced. In that case White as president and Marshall as secretary, without, so far as the record shows, the knowledge or authority of the directors, and without any consideration moving to the corporation, executed and delivered to White individually the promissory note of the corporation. The note was thereafter transferred by White to a private creditor, who in turn indorsed it to the plaintiff; a default judgment was subsequently rendered on it against the corporation, after service on the president. In an attack on the validity of this judgment the court held: "A promissory note of a corporation, executed by the president and secretary, to the president personally, and indorsed by him to a third

party, is prima facie fraudulent, and a judgment thereon is no better than the note. The holder of such a judgment has the burden of proof as to the validity of both note and judgment." It is needless to multiply authorities. As far as we have been able to find, there has been no contrary opinion in a case involving a similar state of facts; but both courts and standard text-writers are in accord on the subject. Brown *v.* Pettit, 178 Penn. St. 17; Wheeler *v.* Home Savings Bank, 118 Ill. 34; Third National Bank *v.* Marine Lumber Co., 44 Minn. 65; Wilbur *v.* Lynde, 49 Cal. 207; Chemical *v.* Wagner, 93 Ky. 525; Eastman *v.* Cooper, 15 Pick. 290; Wilson *v.* Metropolitan Elevated Ry. Co., 120 N. Y. 145; Cook on Corp. (5th ed.) §293; 10 Cyc. 942. The cases of *Kaiser* v. *U. S. National Bank,* 99 *Ga.* 258, and *Jacobs' Pharmacy Co.* v. *Southern Banking and Trust Co.,* 97 *Ga.* 573, relied upon by the defendant in error, are easily distinguishable, on the facts, from the present case. See Cheever *v.* Pittsburgh R. Co., 150 N. Y. 59; Rochester & Charlotte Turnpike Road Co. *v.* Paviour, 164 N. Y. 281 (58 N. E. 114, 52 L. R. A. 790).

The law must be as herein contended; else corporations would be at the mercy of dishonest officials, and positions of corporate trust would be prostituted to private gain, and corporate property be exhausted in payment of personal debts. A bona fide holder of a promissory note executed by an officer in the name of the corporation and payable to the officer executing it, as an individual, in legal contemplation can not exist. The person and the subject are in positive contradiction. The point in question has never been directly ruled on by the Supreme Court of Georgia; but the principle as herein announced has been substantially upheld in *Dobbins* v. *Etowah Mfg. Co.,* 75 *Ga.* 238, where it was held that a note made by the president of the corporation to himself could not be enforced against the corporation without proof of actual authority to make it. And in *Exchange Bank* v. *Thrower,* 118 *Ga.* 434, where it is declared that "Authority to borrow money is one of the most dangerous powers which a principal can confer upon an agent. Whoever lends to one claiming the right to make or indorse negotiable paper in the name of another does so in the face of all the danger signals of business. He need not lend or discount until assured beyond doubt that the principal has in fact appointed an agent who by the stroke of a pen may wipe out

his present fortune and bind his future earnings. The very nature of the act is a warning; and if the lender parts with his money, he does so at his own peril." We think the principle contended for in this opinion is fully supported by our Civil Code, §3699 : "Any circumstances which would place a prudent man upon his guard in purchasing negotiable paper shall be sufficient to constitute notice to a purchaser of such paper before it is due." The fact that a note made in the name of a corporation by an officer is made payable to such officer as an individual constitutes a sufficient circumstance of itself to put a prudent man on notice that such note was made without authority, and, therefore, not binding upon the corporation. Besides this presumption of law raised by the note itself, the extrinsic evidence indisputably proved that the note sued on was executed by the president of the corporation in its name, not only without authority, but in violation of the by-laws of the corporation, and was made solely for his benefit in payment of a private pre-existing debt. The taker of the note, therefore, having been notified by its terms that it was executed without authority, was put upon inquiry, and was bound by the facts which such inquiry would have disclosed. Even if this were not so, the evidence shows that he knew at the time he took the note that it was made and given in payment of a private debt of the president as an individual, in which the corporation had no interest. In no way was he entitled to protection as a bona fide holder, and the verdict in his favor was contrary to law and wholly without evidence to support it.            *Judgment reversed.*