## 2011. HERRINGTON & COMPANY *v.* SHUMATE RAZOR COMPANY.

The legal evidence introduced on the trial being insufficient to warrant the finding of the jury, the court erred in not sustaining the certiorari and granting a new trial.

Certiorari, from Gwinnett superior court—Judge Brand. June 7, 1909.

Argued October 26,—Decided November 9, 1909.

*Emmett O. Dobbs,* for plaintiffs in error. *O. A. Nix,* contra.

RUSSELL, J. On the hearing in the court below the judge overruled the certiorari; and exception is taken to this judgment. The single error assigned in the petition for certiorari is that the verdict is contrary to law, in that it is without evidence to support it. Upon a review of the record as it appears in the answer of the magistrate, we find that the Shumate Razor Company brought suit against Herrington & Company upon an open account for certain merchandise alleged to have been sold to that partnership. It is undisputed that the partnership is composed of W. F. Herrington and Lizzie Herrington. Whether the defendants received the goods or not, the first question to be determined is whether either W. F. Herrington or Lizzie Herrington, or any person shown to have been authorized to act as agent of the partnership, contracted for the purchase of the goods in question. It is well settled that agency is not to be presumed, and must be established by the party claiming it to exist. It is likewise settled that agency is not provable by the mere declaration of one who claims to be the agent of another. The power of binding one by the acts or sayings of another must be established in some way by competent evidence. Taking the evidence in behalf of the plaintiff in error in its strongest light, and attributing to it that verity which was imparted to it by the finding of the jury, the case does not rest upon a foundation which authorized the finding in behalf of the plaintiff. We leave out of sight the duplicate contracts made with W. B. Herrington, the fact that the express receipts show that the goods were originally shipped to him, as well as the letters written to him, demanding payment for at least a part of the account now involved. It was within the power of the jury to disregard all of the evidence introduced in behalf of the defendants or tending to establish their non-liability; and

so we confine ourselves simply to the inquiry whether, taking all the evidence, from whatever source derived, which was favorable to the plaintiff, enough was shown to prove either that W. B. Herrington was authorized to make purchases of goods in behalf of Herrington & Company, that they held him out as a member of the firm, or that the firm, having received the goods and enjoyed the benefits therefrom, so ratified the act of W. B. Herrington as to constitute his acts in the premises their own. The plaintiff's witnesses testified, that the contracts were made with W. B. Herrington, that the first order was sent in his name, and that the goods were expressed to W. B. Herrington. But the manager of the Shumate Company testified that before he shipped the razors he looked for the rating of W. B. Herrington, and, finding that he was not rated, and finding that Herrington & Company, in the same town, were rated, he extended the credit to Herrington & Company, although he charged the account upon his books to W. B. Herrington and shipped the goods to him. So far, then, as the manager is concerned, the theory that W. B. Herrington had any connection with the firm of Herrington & Company, or that he was authorized to purchase goods in their behalf and bind them for the payment at his pleasure, rests, not upon anything that Herrington & Company had done in the premises, but upon the manager's conclusion that inasmuch as W. B. Herrington was not rated by Dun's Commercial Agency, and Herrington & Company were, it would be safer to extend the credit to the partnership of Herrington & Company. The case is a good deal like that of the old miller who kept his accounts by means of chalk marks on the floor under his bed. A bear got in the house and went under the bed, and, in the scuffle necessary to bring that animal out and kill him, the miller's scores were all obliterated. The next day he spent a considerable length of time, busily engaged with his chalk, under the bed. When his wife, who had been greatly worried at the loss of his records, anxiously asked him how he was succeeding in restoring them, he replied that he might be unable to get all of them, but that he was getting them against much better parties. We think that unless a member of the partnership did something to hold W. B. Herrington out as a member of the firm, the defendants, who are shown to have received no benefit whatever from the razors sold to W. B. Herrington, can not be presumed to be bound by his acts as their agent, merely because the firm of Her-

rington & Company may be more responsible financially than W. B. Herrington. Another witness testified that.W. B. Herrington represented himself to be the buyer for Herrington & Company, and that he took the second order of razors under this impression. There is no evidence that either member of the firm said or did anything to lead this salesman to believe that W. B. Herrington was a member of the firm. If it were settled that a partnership, neither one of whom, so far as the evidence shows, knew of the purchase of a certain bill of goods, or received the goods (which were shipped to an outsider), could be held responsible for the purchase made by an outsider, simply because he stated that he was the buyer for the firm, all business would practically be impracticable. Hence, it is provided in the code that a mere declaration of an agent is not sufficient to establish agency. It is true that W. B. Herrington testified in this case that he had sometimes given orders for goods for Herrington & Company; but this was qualified by the statement that W. F. Herrington did all of the buying for the firm, and that the orders he had given were with the consent of W. F. Herrington, and only then to fill in some line of goods already carried in stock. He testified in the same connection that he was not authorized to order goods in a new line, and that Herrington & Company had never kept razors as part of their stock, though they had disposed of a few razors drawn in a prize contest of some description. It does not matter whether the testimony of W. B. Herrington, that he never had authority to order any razors for Herrington & Company, may be untrue; for even if this be so, the plaintiff failed to show that W. B. Herrington was authorized to purchase the razors in question. Furthermore, even if W. B. Herrington had been authorized to buy goods for the firm, no deduction would follow from this that he was authorized to buy goods in the firm name to be shipped to himself personally.

It appears from the order of the trial judge overruling the certiorari, though not elsewhere in the record, that W. B. Herrington is a son of W. F. Herrington, and it also appears that he had a barber shop in one corner of the building occupied by the stock of Herrington & Company, and that sometimes, when he was not busy with his barber business, he would assist in serving a customer of Herrington & Company. We can not hold, however, that the fact that one is the son of one of the members of a copartnership,

or that he occupies the same place of business, or even the fact that he has the power to sell goods, implies the delegation of agency to incur debts binding upon the partnership.    The only evidence in the case which tends to show any authority on the part of W. B. Herrington to order goods for Herrington & Company is found in the conclusions of the manager, to which we have referred above, and a like statement on the part of Hillis, who sold the second bill of goods, that his understanding was that W. B. Herrington was the buyer and manager of the firm.    These conclusions of the witnesses, like hearsay, are of no probative value, unless the facts on which the opinion is based sustain the opinion rendered.    *Suttles* v. *Sewell,* 117 *Ga.* 214 (43 S. E. 286) ; *Easllick* v. *Southern R. Co.,* 116 *Ga.* 48 (42 S. E. 499) ; *Claflin* v. *Ballance,* 91 *Ga.* 412 (18 S. E. 309).    Such testimony is illegal and inadmissible, under any view of the case, and, even if admitted, is of no probative value.

*Judgment reversed.*