## 20800. HORTON *et al. v.* TWAY.

DECIDED APRIL 14, 1931.

*Burress & Dillard,* for plaintiffs.

*William Wallace Lyons,* for defendant.

BLOODWORTH, J. Horton Brothers, a firm composed of O. E. & M. C. Horton, brought suit against Mrs. Mary L. Tway, alleging that the defendant authorized them to secure a loan on certain property for her, and that after they secured a loan for the defendant she refused to close the transaction, and as a result of such refusal the plaintiffs sustained a loss of $825 commissions. The bill of exceptions assigns error upon the direction of a verdict for the defendant, and upon the ruling out of evidence of three documents, viz.: a writing purporting to authorize Horton Brothers to procure a loan; a writing addressed to Stansbury Realty Company accepting "the proposition made of loan of $16,500.00, . ."; and a writing addressed to Horton Brothers accepting "the loan referred to in application." All these writings are signed "Mary L. Tway by Chas. W. Tway."

The record contains no power of attorney from Mary L. Tway to Charles W. Tway authorizing him to sign her name, or to obligate her to make a loan, or to obligate her to pay commissions; and there is not one scintilla of evidence to show that Charles W. Tway had any authority to sign his wife's name to the documents in question, or bind her to comply with such documents or to pay any commissions. Neither of the plaintiffs testified that they had any dealings with Mrs. Tway, and one of the plaintiffs testified: "I never did have any dealings with Mrs. Tway. . . I never had any transaction with her whatever." Miss Lillian Stansbury, of the firm of Stansbury Realty Company, who was to furnish or procure the money for the loan, testified: "I did not discuss it with Mrs. Tway at all; all of my negotiations were with him. . . I never did call up Mrs. Tway or have any discussion with her at all."

Charles W. Tway, the husband who signed his wife's name by him to the documents, testified: "I have not mentioned this to Mrs. Tway; I have not asked her for any authority, and she has not given me any authority." And he testified further, in reference to his signing his wife's name to the documents, that Miss Stansbury, the person who was to secure the money, told him, "It is a matter of form only, you sign Mary L. Tway by Charles W. Tway," and that he "told her emphatically that I had not told Mrs. Tway anything about it. . . I signed this at her [Miss Stansbury's] request, and explained to her that I had never told Mrs. Tway anything about it. . . I told her I had never discussed it with Mrs. Tway. . . I had no authority." Mr. Tway explained in his testimony that the writings had been altered after he signed them, and that the loan ultimately offered was not the amount originally agreed upon, and was not sufficient to pay off the old loan as was understood by him. Mrs. Tway testified: "I never had any conversation with either of the Messrs. Horton or with Miss Stansbury. . . I never asked Mr. Tway to make a loan with either of the Horton Brothers or Miss Stansbury. . . I did not give the deed to my home to Mr. Tway to take to Miss Stansbury." The fact that Mr. Tway stated in one of the documents that he had authority to sign his wife's name is not binding on the wife if in fact he had no authority to make such statement or to bind her. Mrs. Tway is in no way liable for any expense that Horton Brothers saw fit to incur before they had proper legal authority from her to incur it. There is no evidence that Mrs. Tway gave her husband any authority to bind her to pay commissions or to make a loan, and no evidence to show that she ever ratified her husband's acts which are alleged to bind her.

Under the laws of Georgia a husband, without his wife's authority, can not in any way bind her separate estate. The plaintiffs should have ascertained that Mr. Tway had power of attorney to bind his wife, or else should have had Mrs. Tway to execute the papers. Mere agency to sell real estate or to procure someone who will make a loan on real estate does not carry with it power or authority to sign the principal's name; and this is true even though the agent may state that he has authority to sign the principal's name. He could make such statement without authority as well as he could sign the papers without authority. "Agency can not be

proved by the declaration of the alleged agent, whether spoken or written." *Grand Rapids School Furniture Co.* v. *Morel,* 110 *Ga.* 321 (35 S. E. 312) ; *Almand* v. *Equitable Mortgage Co.,* 113 *Ga.* 983 (3) (39 S. E. 421) ; *Americus Oil Co.* v. *Gurr,* 114 *Ga.* 624 (40 S. E. 780) ; *Bernstein* v. *Koken Barber's Supply Co.,* 1 *Ga. App.* 445 (57 S. E. 1017). "And unless it appear by competent evidence that he is authorized to act for another, *his sayings are inadmissible."* (Italics ours.) *Brooke* v. *Lowe,* 122 *Ga.* 358, 359 (1) (50 S. E. 146) ; *Bernstein* v. *Koken Barber's Supply Co.,* supra. The plaintiffs introduced no evidence to show Tway's authorized agency to represent his wife, other than Tway's own declarations contained in the document signed by him, which was inadmissible ; and the burden of proving agency was on the plaintiffs who asserted it. "Where there is an attempt to bind a person by the act of an agent, it is necessary for the person asserting the agency to establish it." *White Sewing Machine Co.* v. *Horkan,* 7 *Ga. App.* 283 (3) (66 S. E. 811). While husbands often represent their wives in specific business matters, this is not a general agency and by no means gives them authority to sign the wife's name in a specific matter ; nor would agency of the husband be presumed in such case. It must be affirmatively established. *Pioneer Guano Co.* v. *Palmer,* 145 *Ga.* 323, 324 (89 S. E. 218) ; *Eberhardt Machine Works* v. *Houser,* 18 *Ga. App.* 35 (88 S. E. 751) ; *Herrington* v. *Shumate Razor Co.,* 6 *Ga. App.* 861 (65 S. E. 1064). Moreover, "authority to borrow money is among the most dangerous powers which a principal can confer upon an agent, and must be created by express terms, or be necessarily implied from the very nature of the agency actually created." *Exchange Bank* v. *Thrower,* 118 *Ga.* 433 (45 S. E. 316) ; *Ozburn* v. *Morris,* 22 *Ga. App.* 325, 326 (95 S. E. 1019) ; *Hargrove* v. *Armour Fertilizer Works,* 31 *Ga. App.* 465, 468 (120 S. E. 800).

While Mrs. Tway knew that her husband was investigating to ascertain where a loan on this property could be procured, she had a right to presume that if and after he found it he would report to her, and she did not know, so far as any evidence shows, that her husband was going to sign her name to an application, or attempt to bind her to make a loan, or bind her to pay commissions, without her authority ; and she did not know that her husband was dealing with the plaintiffs. But even if she had had knowledge of

her husband's dealings with the plaintiffs, this would not have proved Tway's agency. *Cooper* v. *Delk,* 108 *Ga.* 550 (34 S. E. 145). Even proof of agency to deal with other persons would not have been admissible to show authority of the husband in this particular transaction. See *Conyers* v. *Ford,* 111 *Ga.* 755, 756 (2) (36 S. E. 947); *Ham* v. *Brown, 2 Ga. App.* 71 (3) (58 S. E. 316).

The court properly excluded the written documents from the evidence and directed a verdict for the defendant.

*Judgment affirmed. Luke, J., concurs. Broyles, C. J., disqualified.*