25982. D. A. D., INC. et al. v.
CITIZENS & SOUTHERN BANK OF TUCKER.

ARGUED SEPTEMBER 17, 1970—DECIDED JANUARY 7, 1971.

*R. F. Duncan, Davis & Stringer, Thomas O. Davis,* for appellants.

*Alston, Miller & Gaines, Ronald L. Reid,* for appellee.

ALMAND, Chief Justice. This appeal is from a final judgment awarding a money judgment and injunctive relief in favor of the plaintiff.

This action was tried by the court without the intervention of a jury, upon agreement of the parties. A complaint was filed by the C. & S. Bank of Tucker, Georgia, against D. A. D., Inc., a Florida Corporation, and J. W. Dickson.

It alleged that D. A. D., Inc., executed and delivered to the plaintiff a promissory note on June 28, 1966, for the sum of $9,000 with interest at the rate of 8% per annum. It further al-

leged that the note was past due and unpaid. Count 2 alleged that J. W. Dickson endorsed the note. The prayers on these two counts were for a judgment against the defendants for the principal and interest.

Count 3 alleged that at the time the note was executed, defendant Dickson, Secretary and Treasurer of D. A. D., Inc., was advised that the loan would not be made unless secured by sufficient collateral. It also alleged that Dickson, in his individual capacity, and as secretary and treasurer of the corporation, stated to the plaintiff's cashier that the corporation held a note and deed to secure a debt on real property in DeKalb County and that the amount still owed on said note was more than the amount he borrowed from the bank. The said Dickson, as secretary and treasurer of the corporation, endorsed the promissory note signed by Henry Bryant and Onnie Mae Bryant dated July 1, 1962, in the principal sum of $10,582; and on behalf of the corporation, transferred and assigned the note and deed to the plaintiff.

It further alleged: "That, in fact, defendant D. A. D., Inc. had foreclosed on said property located within DeKalb County on September 1, 1964, but had intentionally failed to record the deed under power of attorney back to it until September 21, 1967. "That on June 28, 1966, when defendant J. W. Dickson individually and as Secretary and Treasurer of defendant D. A. D., Inc. represented to plaintiff that defendant D. A. D., Inc. held the note and deed to secure debt attached hereto as Exhibits 'B' and 'C' said defendant J. W. Dickson individually and in his capacity as Secretary and Treasurer of Defendant D. A. D., Inc. knew that said deed to secure debt had been foreclosed in September of 1964 and that said note and deed to secure debt were ineffective documents to provide plaintiff with any collateral as security for its aforesaid loan.

"That said representations to plaintiff by defendant J. W. Dickson individually and as Secretary and Treasurer of defendant D. A. D., Inc. were part of a conspiracy between J. W. Dickson individually and D. A. D., Inc. whereby plaintiff would be deprived of its money without proper collateral or security for its aforesaid loan.

"That plaintiff in fact relied upon the fraudulent conspiratorial

representations made by defendant J. W. Dickson and defendant D. A. D., Inc. in making said loan.

"That as of the date of filing this complaint, defendants are in default on said promissory note and by other means plaintiff has been able to recover $1,674.88 leaving an uncollected balance of $7,325.12.

"That by reason of the foregoing facts, plaintiff is entitled to recover from defendants, jointly and severally, the amount heretofore unrecovered by plaintiff by reason of said facts plus interest at the legal rate, plus punitive damages in the amount of $10,000.

"Additionally, by reason of the aforesaid facts plaintiff is entitled to an injunction restraining and enjoining defendant D. A. D., Inc. from transferring, conveying, encumbering or in any other way affecting its interest in the real estate described in Exhibit 'C' hereto; plaintiff is informed and believes that by reason of defendants' deceitful and artful practices said real estate might be sold, the proceeds dissipated, thereby depriving plaintiff of its remedy at law.

"Further, plaintiff states that Henry Bryant and Onnie Mae Bryant, the makers of the note and deed to secure debt attached hereto as Exhibits 'B' and 'C', are still living on the subject real estate and have been paying rent to defendants and are still paying rent to defendants; that by reason of all the facts set forth herein, defendants should be restrained and enjoined from collecting any further rentals on said property from Henry Bryant and Onnie Mae Bryant and should be compelled to put all such rentals collected since June 28, 1966, into the registry of this court to so remain until this litigation is terminated."

The prayers of this count included a prayer for a money judgment in the sum of $7,325.12, plus interest, and punitive damages in the sum of $10,000.

In its answer, D. A. D., Inc., asserted that the note sued on was not executed by the corporation, or by anyone authorized to execute the same in behalf of the corporation.

The court, after a hearing, granted an interlocutory injunction restraining defendants from doing any act effecting any change in the ownership, interest, or security interest, in a described tract

of land in DeKalb County.

After the trial of the case the court entered a judgment on Count 3 of the complaint in favor of the plaintiff in the sum of $7,325.12, plus $2,300 interest; and the interlocutory injunction was continued in force.

The appeal is from this judgment. The error enumerated is that the judgment is contrary to law, contrary to the evidence, and without evidence to support it.

■ The judgment against D. A. D., Inc.: "Prima facie, an officer of a corporation has no authority to use its funds or securities to pay his private obligations or as collateral for his personal loans, and it is well settled that one who takes negotiable paper which appears to be, or which the taker knows to be, the property of a corporation, for the purpose of applying such paper to the personal use of one of the officers of such corporation, or of a third party, is bound to inquire as to the authority of the officer to make such use of the paper, and that if no inquiry is made, the taker is held as though he had knowledge of all that an inquiry would have revealed." 11 AmJur2d 524, Bills and Notes, § 471.

"Applying this principle, that is, that the president of a corporation has no general power or authority to bind a corporation for a loan obtained by him for his own purposes by signing the corporation's name to a note, the corporation receiving no benefit therefrom, nor ratifying the same in any way, with the principle that even though the plaintiff made out a prima facie case by its evidence, if it introduces other undisputed and uncontradicted evidence showing facts which do not entitle it to prevail, then a judgment of nonsuit is proper, the evidence in this case showing that the president of the defendant had no authority to make the loan and sign the note in question and that the defendant received no part of the proceeds thereof, nor received any benefit therefrom, the trial judge did not err in granting the nonsuit against the plaintiff upon the conclusion of its evidence on motion therefor urged by counsel for the defendant." *Farmers & Merchants Bank v. Stovall Invest. Co.*, 50 Ga. App. 277, 283 (177 SE 882).

"The rule that a 'promissory note without consideration, executed in the name of a corporation by one of its officers, and paya-

ble to such officer individually, is void as against the corporation,' even as against a bona fide holder for value [citations omitted], is not based upon the theory that such an officer may not be in fact authorized to bind the corporation by the execution of its note given for a proper purpose, but rests upon the theory that none of its officers is or can be empowered to gratuitously pledge the assets of the corporation, and that one taking such a note is bound to take cognizance that the agent of the corporation, in thus seeking to bind the corporation, might have been acting not in its interest and for its benefit, but for the benefit of himself. The fact that the president of the corporation in executing such a note to himself attaches thereto the corporate seal, while indicating a general official authority to act for the company in the execution of such an instrument, does not remove the suspicion that in thus dealing with himself he might have been exceeding the powers of the corporation itself by seeking to use its credit for the personal benefit of another." *Henderson Lumber Co. v. Chatham Bank &c. Co.,* 33 Ga. App. 196, 198 (125 SE 867).

The burden is upon the holder of such a note to show that it is in fact the contract of the corporation. *Capital City Brick Co. v. Jackson,* 2 Ga. App. 771 (2) (59 SE 92).

It was said by Justice Lamar in *Exchange Bank v. Thrower,* 118 Ga. 433, 434 (45 SE 316): "Authority to borrow money is among the most dangerous powers which a principal can confer upon an agent. Whoever lends to one claiming the right to make or indorse negotiable paper in the name of another does so in the face of all the danger signals of business."

See also *Luden v. Enterprise Lumber Company,* 146 Ga. 284 (91 SE 102, LRA 1917C 485).

Prior to June 1966, the C. & S. Bank had loaned money to one Homer C. Stallings and a corporation known as Lilburn Super Mart, and his indebtedness to the bank in June 1966 was approximately $3,500. In June 1966, J. W. Dickson came to the bank with Stallings and they executed a joint note to the bank for $1,200. A few days later Dickson and Stallings came to the bank and wanted to borrow $9,000 for the purpose of paying off all of Stallings' debts to the bank, "plus giving him additional money to pay on the expenses and debts which Stallings said was necessary

for him to gain admittance to British Honduras." Dickson said he would be willing to sign the note for $9,000. The cashier of the bank informed Dickson that sufficient collateral would be required before the loan would be made. Dickson said most of his assets were in different corporations and that D. A. D., Inc., did own a mortgage secured by a security deed in the name of Bryant on Dickson Street in DeKalb County and he would be willing to assign this as collateral and the corporation would sign the note he, Dickson, would endorse. A note for $9,000 payable to the Bank of Tucker was executed by "D. A. D., Inc., J. W. Dickson, Sec. & Treas." and Homer Stallings and Nellie Stallings, and endorsed by J. W. Dickson. A few days later, the bank received through the mail, the assignment of the Bryant note in the principal sum of $10,582 payable to D. A. D., Inc., bearing the endorsement of D. A. D., Inc., by J. W. Dickson, Sec. & Treas. The bank also received the security deed from the Bryants to D. A. D., Inc., conveying a described tract of land on Dickson Street, in DeKalb County, as security for the note, bearing the transfer to the Bank of Tucker by D. A. D., Inc., signed by J. W. Dickson, Sec.-Treas. with the seal of the corporation.

The evidence discloses that D. A. D., Inc., did not receive any of the proceeds of the $9,000 loan, but all of such proceeds were applied by the bank to pay off the note of Lilburn Super Mart endorsed by Homer Stallings, the note of Nellie Stallings and Homer Stallings endorsed by J. W. Dickson, and other debts of Homer Stallings and Lilburn Super Mart.

There is no evidence in the record that D. A. D., Inc., either gave Dickson general or specific authority to execute the note, or that it in any manner ratified the acts of Dickson.

Applying the principles of law cited in this division of the opinion to the evidence in this case, the court erred in rendering a judgment in favor of the bank and against the defendant D. A. D., Inc., and in granting an injunction against the corporation.

■ Count No. 3 of the complaint upon which the court granted a judgment against J. W. Dickson was based upon the alleged fraud and deceit of Dickson.

*Code* § 105-302 provides: "Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does

act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."

The essential and necessary elements in a case of this nature which must be proved are: (a) that the representations were made by the defendant; (b) that they were knowingly and designedly false; (c) that they were made for the purpose and with the intent to deceive and defraud; (d) that they did deceive and defraud; (e) that they related to an existing or past fact; (f) that the party to whom the false statements were made did not know that they were false; and (g) that the plaintiff relied on their truth and suffered a loss. *Cosby v. Asher,* 74 Ga. App. 884 (41 SE2d 793).

On June 28, 1966, Dickson, who at that time was secretary and treasurer of D. A. D., Inc., and Stallings, told the cashier of the bank that they wanted to borrow $9,000 to pay off the Stallings notes. Mr. Bridges, the bank cashier, told defendant Dickson that the plaintiff would require security for this $9,000 loan and defendant Dickson then told Mr. Bridges that his assets were tied up in various corporations that he controlled and that he would sign the $9,000 note for one of his corporations, D. A. D., Inc. D. A. D., Inc., was to assign to the plaintiff a note and deed to secure debt which it held on real property located in DeKalb County. Dickson also said that he would personally endorse the note. A few days later, the bank received in the mail the note and security deed from D. A. D., Inc. The collateral note was that of Henry and Onnie Mae Bryant dated July 1, 1962, in the sum of $10,582, payable to D. A. D., Inc., and endorsed for the corporation by Dickson as secretary and treasurer.

No voluntary payments were made on the $9,000 note and it went into default. Thereafter, the bank learned that the defendant corporation had, in fact, foreclosed the Bryant deed to secure the debt in September, 1964, and had bought the real estate in its own name, but did not record its foreclosure deed until August 21, 1967, after having assigned the note and security deed to the

bank in June, 1966.

The evidence was sufficient to support the following findings by the trial judge: that the bank made the loan to the defendants and took their joint notes on the assignment of the Bryant note and security deed as collateral; that at the time of the assignment the Bryant deed had been foreclosed and bought in by the corporation and that the collateral asset was valueless; that said loan of $9,000 would not have been made except on the basis of the collateral; that representations were made in order to secure the loan that were false; and that the bank suffered a loss.

The judgment against J. W. Dickson is supported by the evidence.

*Judgment reversed as to the appellant, D. A. D., Inc.; affirmed as to the appellant, J. W. Dickson. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting from the second division of the opinion and from the judgment affirming the trial court's judgment against J. W. Dickson.

I concur in the first division of the opinion and dissent from the second division and the affirmance of the judgment against J. W. Dickson.

The rulings made in the first division of the opinion demand a reversal of the judgment against J. W. Dickson. The facts shown in the first division show that the transaction relative to the $9,000 note to the bank was contrary to public policy and that for that reason it was unenforceable. All parties to that contract were charged with knowledge that D. A. D., Inc., could not pledge its credit or assets to secure a note signed or indorsed by the other parties and that the contract was, therefore, unenforceable. The security transferred as collateral by D. A. D., Inc., as accommodation and without any benefit to it was against public policy and was unenforceable. Since that is true, the fact that Dickson misrepresented that the collateral security deed transferred as security for the $9,000 loan had not been foreclosed renders it indisputable that such a misrepresentation could not have been the cause of the bank's loss for the simple reason that the bank would have lost the benefit of the transferred loan deed even if it had not been foreclosed. This is one reason why the judgment

against Dickson should be reversed. The second reason is that every party to this case was a party to a contract against public policy and void, except D. A. D., Inc. In such a case the law will not lend its aid to give relief to any guilty party, but will leave them where it finds them. *Adams v. Barrett,* 5 Ga. 404 (4); *Code* §§ 20-501 and 20-504. The third reason is that Dickson endeavored to withdraw from the transaction at a time when the bank could have placed all parties in the position occupied before the transaction began, and the bank refused to permit him to do so, and this in spite of the fact that Dickson had not complied with two conditions which the bank had stipulated as prerequisites for the making of the loan, (1) a resolution from the board of directors of D. A. D., Inc., approving the loan and transfer of collateral, and (2), additional security to that by D. A. D., Inc.