**ELY & WALKER, A DIVISION OF FIRST NATIONAL COMPANY, Plaintiff-Appellee,**

v.

**DUX–MIXTURE HARDWARE CO., INC., Defendant-Appellant.**

No. 83–8278.

United States Court of Appeals, Eleventh Circuit.

May 7, 1984.

Jay E. Loeb, Atlanta, Ga., for defendant-appellant.

James Cifelli, Gary D. Stokes, Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

AFFIRMED on the basis of the district court's opinion. *See*, 582 F.Supp. 285 (N.D. Ga.1982).

APPENDIX

In the United States District Court for the Northern District of Georgia Atlanta Division.

C81–1936A

ELY & WALKER, A Division of First National Company

vs.

DUX–MIXTURE HARDWARE CO., INC.

ORDER

Plaintiff filed this diversity action seeking damages from the defendant in the amount of $21,911.68, plus interest from May 5, 1981, which the plaintiff claims is the balance due on account for sales of merchandise to the defendant. The court, having received evidence in this matter at a trial held on July 14, 1982, and at a supplemental hearing held on September 30, 1982, makes the following findings of fact and conclusions of law.

I. FINDINGS OF FACT

Plaintiff Ely & Walker is a division of the First National Company, a Tennessee Corporation whose headquarters is in Nashville, Tennessee. Orders for Ely & Walker's merchandise are solicited by sales representatives, at least four of whom reside and operate in the state of Georgia. These representatives procure orders for customers by completing printed forms, which provide that

[t]his order becomes a contract either, when signed and delivered by Buyer to Seller and accepted in writing by Seller

or at Sellers [sic] option, when Buyer accepts delivery of all or any part of the merchandise ordered hereunder.

The authority of Ely & Walker's sales representatives is limited to solicitation and procurement of orders. Their employment contracts provide that they have no authority to enter into contracts on behalf of Ely & Walker. Completed order forms are sent to Ely & Walker's offices in Memphis, Tennessee. Orders that are neither paid for in advance nor shipped C.O.D. are held in the Memphis office pending approval by Ely & Walker's credit department. The order forms also state that "[t]he delivery of goods to a common carrier or licensed trucker shall constitute delivery to buyer and all risk of loss or damage in transit shall be borne by buyer." All of Ely & Walker's shipments to Georgia buyers are made from its Memphis warehouse.

Ely & Walker's sales representatives annually produce sales totalling approximately $1,000,000 to buyers in Georgia. The activities of these representatives are the only business operations of Ely & Walker in Georgia. The company maintains no offices, warehouses, shipping terminals, telephone listings, books and records, or other employees within the state.

Defendant Dux-Mixture Hardware and Supply Co., Inc. (Dux-Mixture), is a Georgia corporation owned by four members of the Schulman family. David and Vita Schulman, husband and wife, each own forty percent of the corporation's stock. Howard and Alan Schulman, their sons, each own ten percent. David Schulman, cofounder of Dux-Mixture over thirty years ago and both a director and the president of the corporation since its incorporation twenty-five years ago, has long exercised primary control over Dux-Mixture's business operations. At present he shares the direction of daily operations with Howard Schulman, who serves informally as business manager and formally as both a director and a vice-president of the corporation. Alan Schulman has at times also been active in Dux-Mixture's affairs. Although Vita Schulman contributed her separate property to the corporation when the family bought out the interests of David Schulman's former partner at the time of incorporation, since that time she has taken no active part in the operation of the business.

From the time of Dux-Mixture's incorporation, the family has held no formal meetings or taken any votes regarding any matter, and all major business decisions have been made informally, either by David Schulman personally or only after obtaining his consent. Howard Schulman testified that his father has always done as he pleased with the business. Although David, Howard, and Alan all three routinely exercise the authority to place orders with Dux-Mixture's existing suppliers, David Schulman's approval is required for any single purchase of over $1500 worth of merchandise.

Alan Schulman serves as director, secretary, and treasurer of Dux-Mixture. His participation in the daily affairs of the business, however, appears to have varied with the extent of his business interests elsewhere. During the time that this litigation concerns, Alan Schulman spent only about ten percent of his working hours engaged in Dux-Mixture's affairs. He devoted the rest of his time to the operations of Seriously Companies, Ltd. (Seriously), a Georgia corporation that operated several retail clothing stores. Alan Schulman is vice-president, secretary, treasurer, a director, and a shareholder of Seriously. Charles Economy, who is unrelated to the Schulman family, is a shareholder, the president, and the only other director of Seriously. David Schulman also owns some of Seriously's shares, but has had no other role in its affairs.

In the spring of 1979, Seriously sought to establish an open line of credit with Ely & Walker for the purchase of western apparel. After reviewing Seriously's financial statements, Ely & Walker declined to extend the requested credit. In telephone conversations with Ely & Walker's regional credit manager, Alan Schulman explained his family's history of business success in

Atlanta, specifically the operations of Dux-Mixture, in an attempt to persuade Ely & Walker that Seriously was a good credit risk. As a result of these conversations, Ely & Walker decided that it would allow shipment of goods on credit so long as all purchases were billed directly to Dux-Mixture. Although neither Ely & Walker's regional credit manager nor Alan Schulman recalls any mention of the words "guaranty" or "surety" during those conversations, Alan Schulman assumed that Ely & Walker had extended credit to Seriously and would look to Dux-Mixture only as guarantor or surety.

Alan Schulman drafted a letter that contained the language he thought Ely & Walker required as a prerequisite to shipment of goods to Seriously:

This letter is authorize [sic] your company to bill us for any purchases made by Seriously Companies Limited.

We appreciate your working with us in setting up this account this way.

Please feel free to contact us for any further information.

Alan Schulman explained the purpose and contents of the letter to his father, who signed the letter without reading it. Alan then sent the letter to Ely & Walker, who began shipping Seriously's orders for goods and arranged its records to indicate that all purchases would be billed to Dux-Mixture and shipped to Seriously. Over the course of several years, although all orders were taken by sales representatives directly from Seriously, Ely & Walker mailed all invoices to Dux-Mixture. When envelopes containing the invoices, addressed to Dux-Mixture and bearing the return address of Ely & Walker, arrived at the offices of Dux-Mixture, Howard Schulman, acting on instructions from Alan or David Schulman and unaware of the exact nature of their contents, forwarded the unopened envelopes to Alan Schulman. Throughout the course of Ely & Walker's dealings with Dux-Mixture and Seriously, all payments on the account were made by Seriously.

In September 1980, in advance of approving several sizeable shipments of goods, Ely & Walker sought confirmation of the continuing validity of the authorization contained in the April 16, 1979, letter. Alan Schulman responded with the following notation, written in his own hand at the bottom of a photocopy of the original authorization letter:

This is to confirm that the authorization is still in effect.

Thank you for your help in this matter.

This notation was signed by Alan Schulman and was not brought to David Schulman's attention. Ely & Walker thereafter continued to ship merchandise to Seriously and to mail invoices to Dux-Mixture.

By the winter of 1981, Ely & Walker's records showed a balance due of approximately $22,000. In response to Ely & Walker's letters and telephone calls insisting that Dux-Mixture reduce the balance, Dux-Mixture's attorney wrote Ely & Walker the following letter:

The Board of Directors of Dux-Mixture Hardware, Inc., has engaged me to inquire about the corporation's liability to Ely & Walker....

In the files of Dux-Mixture, I find no documentation showing receipt by Dux-Mixture of any goods from Ely & Walker nor do I find a guaranty of any kind. Would you please provide me with any documentation showing the basis of any obligation of Dux-Mixture to Ely & Walker.

If Dux-Mixture Hardware did "guarantee" any extensions of credit to Seriously Companies, Ltd. of Atlanta, Georgia, please be advised that Dux-Mixture hereby revokes any "guaranty" and requests that you proceed to collect any unpaid balance from Seriously Companies, Ltd....

As Dux-Mixture Hardware is awaiting my report before making any further payments, please reply to me promptly.

In a letter dated April 29, 1981, Ely & Walker's credit manager agreed not to bill Dux-Mixture for future shipments to Seri-

ously but reasserted its intention to hold Dux-Mixture liable for past shipments.

Ely & Walker chose not to proceed against Seriously and instead filed this action on October 23, 1981, maintaining that Dux-Mixture's liability for the balance due on the account is a "primary" obligation rather than a guaranty or suretyship.

In a letter dated November 9, 1981, Dux-Mixture's attorney informed Ely & Walker that "[i]nasmuch as you claim that my client purchased various items from your client in 1979 and 1980 in the State of Georgia, and your client has not qualified to do business in Georgia, Dux-Mixture hereby rescinds all transactions prior to 1980 with Ely & Walker pursuant to Georgia law."

During preparation for trial, Dux-Mixture asserted that Ely & Walker had willfully failed to file an *ad valorem* tax return on intangible personal property located in Georgia and therefore was barred from bringing suit by Georgia Code Ann. § 91A–3111 [now Official Code of Ga.Ann. § 48–6–32]. In anticipation of trial, Ely & Walker filed a tax return with the Georgia Department of Revenue for taxes owing on accounts receivable that resulted from orders procured in Georgia. In response, Ely & Walker received a form letter indicating that the Department could not process the return until Ely & Walker identified the county in which the intangibles were located. During a telephone conversation with an employee of the Department, Ely & Walker was told that it need not pay the *ad valorem* tax.

## II. CONCLUSIONS OF LAW

Dux-Mixture does not dispute that the shipments of merchandise were ordered by and shipped to Seriously. Nor does Dux-Mixture question whether the balance due indicated by Ely & Walker's records is accurate. Dux-Mixture asserts numerous defenses: first, that this suit is barred by Ely & Walker's failure to qualify to do business in Georgia, its failure to pay the *ad valorem* tax on intangible personal property, and its failure to proceed against Seriously

as requested by Dux-Mixture; and second, that any promise by Dux-Mixture to pay for goods shipped by Ely & Walker to Seriously was void for want of consideration and for lack of authority for David or Alan Schulman to bind Dux Mixture to purchase the goods.

A foreign corporation is forbidden to transact business within the state of Georgia without first obtaining a certificate of authority from the Secretary of State. Official Code of Ga.Ann. § 14–2–310(a) [former Ga.Code Ann. § 22–1401(a)]. A foreign corporation required to obtain such a certificate is not permitted to maintain any suit in Georgia unless it has obtained such a certificate before commencement of the action. Official Code of Ga.Ann. § 14–2–331 [former Ga.Code Ann. § 22–1421(b)]. However, a foreign corporation can engage in some limited activities within Georgia without subjecting itself to the requirement that it obtain the certificate of authority. Official Code of Ga.Ann. § 14–2–310(b) [former Ga.Code Ann. § 22–1421(b)] provides that a foreign corporation

> shall not be considered to be transacting business in this State ... solely by reason of carrying on in this State any one or more of the following activities;
>
> . . . .
>
> (6) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this State before becoming binding contracts, and where such contracts do not involve any local performance other than delivery and installation.

Ely & Walker's contracts provide for out-of-state acceptance in Memphis, and its practice of requiring credit department approval before shipment of goods shows that its actual practice is consistent with the terms of its printed forms. Defendant has not introduced evidence of any activities of Ely & Walker in this state other than its procurement of orders and delivery of merchandise. The court concludes that Ely & Walker's limited activities do not subject it to the requirement of obtaining a

certificate of authority. *See Atlas Match Corp. v. Berry Realty Co.*, 142 Ga.App. 588, 236 S.E.2d 554 (1977).

The state of Georgia levies an annual tax on intangibles, Official Code of Ga.Ann. § 48-23 [§ 48-6-23] [former Ga.Code Ann. § 91A-3103], which include accounts receivable, Official Code of Ga.Ann. § 48-6-21(4) [former Ga.Code Ann. § 91A-3102(4)]. One penalty for failure to comply with the intangibles tax provisions is set forth in Official Code of Ga.Ann. § 48-6-32 [former Ga.Code Ann. § 91A-3111]:

> Willful failure to return any property to the commissioner for taxation as required by this article shall be a bar to any action upon the property in any court and may be pleaded as a complete defense to the action, but the holder of the property may at any time pay all taxes, accrued interest, and penalties. Payment in full shall relieve the holder from the penalty provided in this Code section.

The court concludes that Ely & Walker's failure to pay an intangibles tax on its accounts receivable does not bar its maintenance of the present action. The situs of Ely & Walker's accounts is Tennessee, where the contracts are accepted and where, by the terms of the order forms, title passes to the buyer for goods shipped. Its accounts receivable are therefore not subject to the intangibles tax. *Cosby v. A.M. Smyre Manufacturing Co.*, 158 Ga. App. 587, 590, 281 S.E.2d 332, 335 (1981). Furthermore, Ely & Walker's attempts to file a return indicate that its failure to pay the tax was not willful.

Official Code of Ga. § 10-7-24 [former Ga.Code Ann. § 103-205] provides, in part:

> Any surety, guarantor, or endorser, at any time after the debt on which he is liable becomes due, may give notice in writing to the creditor, his agent, or any person having possession or control of the obligation, to proceed to collect the debt from the principal or any one of the several principals liable therefor; and, if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this state), the endorser, guarantor, or surety giving the notice, as well as all subsequent endorsers and all cosureties, shall be discharged.

Regardless of whether Alan or David Schulman possessed the subjective intent to bind Dux-Mixture only as a guarantor or surety, the words contained in the letter of authorization, which state what Alan Schulman thought Ely & Walker required before they would agree to extend credit, provide that Dux-Mixture is to be billed for purchases made by Seriously. Such language is more consistent with an agreement to pay for goods than with an agreement to pay for goods another may fail to pay for. Ely & Walker's refusal to extend credit on the strength of Seriously's financial statement and its practice of treating Dux-Mixture as a customer in its billing and record keeping practices provide strong evidence that Ely & Walker sought and believed it had obtained from Dux-Mixture a primary obligation to pay for the goods. *See Maddox v. Pierce*, 74 Ga. 838 (1885); *See also Corday [Cordray] v. James*, 19 Ga.App. 156, 91 S.E. 231 [239] (1916) ("Where a person tells another to let a third person have goods, and that he will see that the debt is paid, and credit is accordingly given the promisor, the promise is an original and not a collateral undertaking . . . ."); 2 *Corbin on Contracts* § 353, at 230–36. Dux-Mixture's use of the phrase "bill us" was likely to cause Ely & Walker to assume that the Dux-Mixture letter intended a primary obligation, and Dux-Mixture has pointed to nothing either in the letter or in the parties' dealing that would tend to dispel such an assumption or put Ely & Walker on notice that Dux-Mixture intended only to guarantee payment. The court finds that Dux-Mixture is neither a surety, guarantor, nor an endorser, and therefore Ely & Walker was not required by section 10-7-24 to proceed against Seriously in order to preserve its right to hold Dux-Mixture liable. The court therefore need not determine whether the letter sent by Dux-Mixture's attorney requesting that Ely &

Walker proceed against Seriously provided sufficient notice to discharge any liability of Dux-Mixture.

Dux-Mixture contends that because it received no benefit from Ely & Walker, it has received no consideration in exchange for its promise to pay Seriously's bills. In response to Ely & Walker's assertion that consideration can consist not only of a benefit to a promisor but of detriment, trouble, or damage to a promisee resulting from the promisee's performance, Dux-Mixture contends that such a rule has no application when the promisor is a corporation. Dux-Mixture relies on two Georgia cases, neither of which lends conclusive support to its want of consideration defense. The more recent case, *Thomas v. Dickson,* 162 Ga.App. 569, 291 S.E.2d 747 (1982), merely restates the well-established rule that "a gratuitous promise made without consideration ... has no binding effect on [a] corporation." *Id.* at 571, 291 S.E.2d at 749. There was no indication in the facts of *Thomas* that the intended beneficiary had relied to her detriment on the corporation's promise to pay her a "death benefit" or "salary continuation" after the death of her husband, a former officer and director of the corporation. *Thomas* thus fails to call into question the applicability to corporations of the rule that detrimental reliance forms consideration for a promise that induces such reliance.

In the other case relied on by Dux-Mixture, *D.A.D., Inc. v. Citizens & Southern Bank of Tucker,* 227 Ga. 111, 179 S.E.2d 71 (1971), the Georgia Supreme Court held that

> the president of a corporation has no general power or authority to bind a corporation for a loan obtained by him for his own purposes by signing the corporation's name to the note, the corporation receiving no benefit therefrom, nor ratifying the same in any way....

*Id.* at 114, 179 S.E.2d at 74. The court held that anyone who accepts from a corporate officer a note that gratuitously pledges the assets of the corporation

is bound to take cognizance that the agent of the corporation in thus seeking to bind the corporation, might have been acting not in its interest and for its benefit, but for the benefit of himself.

*Id.* Dux-Mixture argues that the circumstances surrounding Alan Schulman's attempt to obtain credit for Seriously on the strength of Dux-Mixture's name should have put Ely & Walker on notice that the corporation itself would receive no benefit from the shipments of western apparel to Seriously. Dux-Mixture raises the same notice argument regarding the authority of David or Alan Schulman to bind the corporation for payment of the bills: the circumstances surrounding Alan Schulman's attempts to obtain credit should have caused Ely & Walker to seek evidence of corporate authority for David or Alan Schulman to issue the letter of authorization.

The court need not decide, however, whether Ely & Walker was sufficiently aware of the gratuitous nature of Dux-Mixture's undertaking to pay for the goods or of any want of authority on the part of David or Alan Schulman that it should have made inquiries into the sufficiency of consideration or the existence of authority. Under the law of Georgia stated in *D.A.D. Inc.,* a corporation may be estopped from asserting as a defense lack of consideration or want of authority if it gave the officer who made the contract in question the general or specific authority to bind the corporation or if it in any manner ratified that officer's acts. *Id.* at 116, 170 [179] S.E.2d at 75. By a long course of conduct, the board of directors of Dux-Mixture invested David Schulman with the authority to do whatever he wanted with the business of Dux-Mixture. Although as a general practice he often consulted one or more members of the family before taking certain actions, they did not consider him to have a duty to consult with them. By foregoing the formalities of holding director's meetings, voting, and keeping minutes, the directors of Dux-Mixture acquiesced in David Schulman's operation of the business as if it were his sole proprietorship. Howard Schulman testified that David Schulman

had always done as he pleased with the business. David Schulman indicated that he signed the letter of authorization because he would do anything to help his sons. Through years of allowing him a free hand, the directors gave David Schulman the power to help one son to the possible detriment of the entire corporation. Having indulged in such informality, and having thereby given David Schulman the general authority to bind the corporation as he pleased, Dux-Mixture cannot now assert as defenses the corporation's want of consideration, David Schulman's lack of authority, the absence of formal ratification, or the corporation's subsequent informal repudiation. *See Newton v. Social Circle Cotton Mill Co.*, 174 Ga. 320, 162 S.E. 667 (1932); *Potts-Thompson Liquor Co. v. Potts*, 135 Ga. 451, 69 S.E. 734 (1910); *Garmany v. Lawton*, 124 Ga. 876, 53 S.E. 669 (1906).

It is true, of course, that Ely & Walker seeks damages for the cost of goods shipped after it had received Alan Schulman's confirmation note written upon a copy of the original letter of authorization and that the directors of Dux-Mixture had not invested Alan Schulman with the same broad powers it had given David Schulman. Nevertheless, the account was opened in Dux-Mixture's name with David Schulman's approval after negotiations with Alan Schulman. That Alan Schulman rather than David Schulman signed the confirmation note should not alone have caused Ely & Walker to suspect that its contract with Dux-Mixture was not binding. Moreover, the nature of Dux-Mixture's obligation would not have been altered had Ely & Walker sought no confirmation, and Ely & Walker should not be penalized now for having received unnecessary confirmation from one who may have lacked the authority to give it.

Thus, none of Dux-Mixture's asserted defenses relieves it of its obligation to pay Ely & Walker for the goods billed to Dux-Mixture and shipped to Seriously. Because Dux-Mixture does not dispute the amount of damages claimed, the court will grant judgment for Ely & Walker for the amount sought in the complaint. Ely & Walker is therefore entitled to judgment for the principal amount of $21,911.68, plus $6,354.39 interest at the rate of eighteen percent per annum from May 5, 1981, to the date of this order, for a total of $28,266.07.

Accordingly, the clerk is DIRECTED to enter FINAL JUDGMENT FOR THE PLAINTIFF in the amount of $28,266.07.

IT IS SO ORDERED, this 16th day of December, 1982.

/s/Richard C. Freeman
RICHARD C. FREEMAN
United States District Judge